```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/20/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
    TERRELL JENKINS,

                              Petitioner,                    1:23-cv-9613-GHW-RWL

        -against-                           **MEMORANDUM**
                                                            **OPINION & ORDER**
SUPERINTENDENT LYNN LILLEY,
*Superintendent, Eastern NY Correctional Facility*,

                              Respondent.
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Terrell Jenkins killed his childhood friend, plunging a knife through his chest and into his heart. During his trial, he was vigorously represented by two attorneys from the Legal Aid Society. Nonetheless, Mr. Jenkins was convicted of second-degree murder. Represented by another lawyer from the Office of the Appellate Defender, Mr. Jenkins appealed his conviction. That appeal was unsuccessful. Mr. Jenkins brought a Section 440.10 motion seeking to vacate his conviction on the grounds that his counsel had been ineffective. That motion was denied.

      Now, in this petition for habeas corpus under 28 U.S.C. § 2254, Mr. Jenkins argues that his lawyers provided him ineffective assistance of counsel. He contends that his trial counsel was ineffective because he failed to seek a jury instruction on intoxication and made certain "adversarial" comments about Mr. Jenkins during summation. And he contends that his appellate counsel acted improperly when he chose not to appeal the trial court's refusal to provide the jury with a justification instruction. Correctly applying the highly deferential standard of review prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") for Mr. Jenkins's claims, Judge Lehrburger issued a report and recommendation recommending that the petition be denied in full. *See* Dkt. No. 33 (the "R&R").

Mr. Jenkins has objected to portions of the R&R. But his only specific objection—which targets the R&R's decision not to analyze whether Mr. Jenkins had the ability to retreat from his encounter with Mr. Meyers—rests on a misunderstanding of New York's justification doctrine. Accordingly, the Court adopts the thoughtful and well-reasoned R&R in full.

### I. BACKGROUND

The Court refers to the R&R for a comprehensive description of the factual and procedural history of this case. *See* R&R at 2–11.[1] The R&R contains a description of the events that led Mr. Jenkins to stab to death his former childhood friend, Edward Meyers. *Id.* at 2-5. The R&R also recounts the evidence of Mr. Jenkins's crime that was presented during his eventual trial, the substance of the charging conference, and the closing arguments made by Mr. Jenkins's counsel. *Id.* at 5-8. As the R&R describes, at the conclusion of his trial, Mr. Jenkins was found guilty of murder in the second degree. *Id.* at 8. The R&R then details Mr. Jenkins's ultimately unsuccessful efforts to appeal his sentence in state court. *Id.* at 8-10. None of these aspects of the R&R have been the subject of objections and, therefore, need not be reprised at length here.

Mr. Jenkins, acting *pro se*, filed his petition for habeas corpus on August 2, 2023 in the Northern District of New York. Dkt. No. 1 ("Pet."). The matter was transferred to this Court on November 1, 2023. Dkt. Nos. 8, 9. In his petition, Mr. Jenkins asserted three specific grounds for relief. First, he argued that he had been denied effective assistance of counsel by his appellate lawyer, Gabriel Newman, because Mr. Newman chose not to raise on appeal the trial court's decision not to provide the jury a "justification" instruction. Pet. at 5. Second, Mr. Jenkins argued that one of his two trial attorneys, Thomas Klein, denied Mr. Jenkins effective assistance of counsel by making "comments adversarial to Mr. Jenkins during summation." *Id.* at 13. And third, Mr. Jenkins argued that Mr. Klein's failure to request an intoxication instruction also constituted

---

[1] Defined terms used without definition in this opinion are defined in the R&R.

ineffective assistance of counsel. *Id.* at 18.

The Court reviewed Mr. Jenkins's petition and concluded that it should not be summarily dismissed. Dkt. No. 11. Therefore, on November 6, 2023, the Court ordered that the respondent answer the petition. *Id.* The same day, the Court referred this matter to Judge Robert W. Lehrburger. Dkt. No. 12. Respondent filed its opposition on March 5, 2024. Dkt. Nos. 25, 26 ("Opp."). Mr. Jenkins filed a reply on June 27, 2024. Dkt. No. 32.

On May 19, 2025, Magistrate Judge Robert W. Lehrburger issued the R&R. In it, he recommended that the Court deny Mr. Jenkins's petition. In the R&R, Judge Lehrburger analyzed, and responded to, each of Mr. Jenkins's arguments, properly affording them a liberal construction, as is appropriate in the case of *pro se* litigants. R&R at 13-14.

Judge Lehrburger began his analysis by evaluating Mr. Jenkins's first contention—that his appellate lawyer should have focused on the trial judge's failure to administer a justification instruction. *Id.* at 16. Judge Lehrburger concluded that there was a reasonable basis to reject the argument, most notably, he wrote, because "Jenkins's antecedent assertion that he was even entitled to the justification charge—and thus it deserved attention on appeal—is unpersuasive." *Id.* In the R&R, Judge Lehrburger explained why the evidence presented at trial did not support the administration of a justification charge. *Id.* at 16-20. "In a case like this one involving deadly physical force, justification exists where the defendant 'reasonably believes that the [victim] is using or about to use deadly physical force' and the defendant 'reasonably believes that using deadly physical force is necessary to avert the perceived threat.'" R&R at 17 (quoting *People v. Goetz*, 68 N.Y.2d 96, 106 (1986)). After reviewing the law and the evidence presented at trial, Judge Lehrburger concluded that "[a]t best, Jenkins may have reasonably feared imminent **non-deadly** physical force, but that would not warrant an instruction on justification for using **deadly** force." *Id.* at 20 (emphasis in original). Judge Lehrburger's summary of the evidence was consistent with that of the trial judge, who, after comprehensive argument by Mr. Jenkins' trial lawyers, also reached the

3

conclusion that the facts presented at trial did not support a justification charge.

The R&R concluded that because Mr. Jenkins's concern about the lack of a justification charge was weak, his appellate counsel was not ineffective for failing to raise the issue again on appeal. R&R at 20. As the R&R explained, "effective appellate advocacy often demands an attorney, in the exercise of professional judgment, to whittle down the defendant's potential claims to avoid 'burying good arguments.'" *Id.* (quoting *Jones v. Barnes*, 463 U.S. 745, 753 (1983)). Judge Lehrburger recognized that a habeas petitioner "may establish constitutionally inadequate performance [of appellate counsel] if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Id.* at 21 (citing *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Mayo v. Henderson,* 13 F.3d 528, 533 (2d Cir. 1994)). However, Judge Lehrburger concluded that "[n]o such circumstances are present here." *Id.*

The R&R then took up Mr. Jenkins's third contention—that his trial counsel was ineffective because he failed to request an intoxication instruction. *Id.* at 22. "An intoxication instruction 'should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis.'" *Id.* at 22-23. (quoting *People v. Gaines*, 83 N.Y.2d 925, 927 (1994) (internal quotation marks and citations omitted)). The New York State Section 440 motion court considered this argument and rejected it because there "was no evidence that the defendant was so impaired by alcohol and/or drugs that he was incapable of forming the intent to stab Meyers." *Id.* (quoting Motion Court Decision at 6). Judge Lehrburger evaluated the evidence presented at Mr. Jenkins's trial and concluded that the Section 440 motion court's view was well-founded: "Though Jenkins testified to having three drinks with dinner and smoking some marijuana on the night of the murder, his testimony does not show that he was 'affected by intoxicants to such a degree that [he] was incapable of forming' the requisite intent. *Id.* at 23-24 (quoting C.J.I.2d (N.Y.)) (internal citations omitted).

Finally, the R&R concluded that the statements made by Mr. Jenkins's trial counsel during

4

his closing arguments did not constitute ineffective assistance of counsel. *Id.* at 27. The R&R explained the context in which Mr. Jenkins's counsel made his statements: because there was no dispute that Mr. Jenkins had killed Mr. Meyers, counsel was seeking not a complete acquittal of all charges, but, rather, for the jury to find that he was guilty of a lesser offense, rather than second degree murder. *Id.* at 27-28. Therefore, the statements that Mr. Jenkins argued to be adverse served "at least two strategic goals." *Id.* at 28. First, they served to persuade the jury that Mr. Jenkins did not have the intent necessary to commit second degree murder; and, second, to address "some of the most damning evidence at trial, including Jenkins's own testimony." *Id.* Since trial counsel's closing arguments advanced a reasonable strategic purpose, the R&R concluded, they did not constitute ineffective assistance of counsel. *Id.* at 28-29.

Objections to the R&R were due within 14 days of the issuance of the R&R—that is, on June 2, 2025. *Id.* at 30. On June 12, 2025, the Court granted a request by Mr. Jenkins for a 14-day extension of that deadline, making the deadline June 16, 2025. Dkt. Nos. 34, 35.[2] On June 24, 2025, not having received objections from Mr. Jenkins more than a week after the deadline, the Court reviewed the R&R using a clear error standard of review and entered an order adopting the R&R in full. Dkt. No. 37. The Court later discovered that although the Court had not received Mr. Jenkins's objections, he had mailed his objections to the Court on or around June 12, 2025—before the deadline.[3] As a result, the Court vacated its prior order and directed the respondent to respond to the objections so that the Court could consider them fully. Dkt. No. 44. The respondent's response was filed on September 5, 2025. Dkt. No. 47. Mr. Jenkins has not filed a reply.

Mr. Jenkins's objections to the R&R raise three issues. Dkt. No. 39 at ECF pages 3–7 (the

---

[2] A duplicate of Mr. Jenkins's June 1, 2025 request for a 14-day extension of time, Dkt. No. 34, was docketed later. Dkt. No. 38.
[3] The Court received the Objections on June 27, 2025. Dkt. No. 39. However, the Objections are dated June 12, 2025, and Mr. Jenkins verified that he delivered the Objections to prison officials at the facility where he is currently housed for mailing. *See* Dkt. No. 39 at ECF pages 7, 38.

"Objections"). First, Mr. Jenkins focused on the R&R's determination that "counsel was not ineffective in not appealing denial of a justification instruction." *Id.* at 1. In particular, Mr. Jenkins takes issue with the R&R's conclusion that Mr. Jenkins was not entitled to the justification charge in the first instance. *Id.* Mr. Jenkins's objections then recount his view of the facts of the evening of the murder. Mr. Jenkins concludes that his first objection is made "because Jenkins could not have retreated, and the prosecutor nor the court explained how or [in] what direction Jenkins could have ran to, to retreat especially with Jenkins looking both ways, having one guy coming from the curb, and looking at Ed at the same time, Mr. Jenkins did not have time to retreat, it was a quick reflection . . . ." *Id.* at 3. Because these facts supported a defense of justification, Mr. Jenkins argued, the instruction should have been given. *Id.*

Mr. Jenkins's second objection focused on the same claim that his appellate counsel had been ineffective. *Id.* at 3. Mr. Jenkins's objection focused on the R&R's conclusion that "considering the weakness of Jenkins['s] underlying Justification Defense, Jenkins cannot show that Attorney Newland's decision to forgo arguing the issue on appeal was unreasonable and prejudicial . . . ." *Id.* at 4. Mr. Jenkins provides no additional argument regarding the asserted deficiencies in the R&R's analysis.

Mr. Jenkins's third objection focused on the R&R's conclusion that the "trial counsel was not ineffective in not asking for an intoxication instruction." *Id.* at 5. Mr. Jenkins's argument on this point was conclusory: in full, he wrote that "I, object to Magistrate Judge Robert W. Lehrburger['s] findings on this intoxication instruction, in its entirety . . . ." *Id.*

The respondent's response to Mr. Jenkins's objections was brief. Dkt. No. 47. It argued that Mr. Jenkins's objections "merely repeat his original arguments . . . ." *Id.* at 2. It contended that Mr. Jenkins's objections were so conclusory that the Court should adopt the R&R's recommendations using clear error review. *Id.*

6

## II. STANDARD OF REVIEW

District courts may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865-LTS-GWG, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citation omitted); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation omitted). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a meaningless dress rehearsal. The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge." *Vega v. Artuz*, No. 97 Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002) (internal quotation marks and citations omitted).

Because Mr. Jenkins is proceeding *pro se*, the Court must construe each of his submissions in support of the petition "liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).

## III. DISCUSSION

The Court treats Mr. Jenkins's first objection to Judge Lehrburger's conclusions in the R&R as sufficiently precise to merit *de novo* review. Among other things, Mr. Jenkins suggests that Judge Lehrburger failed to consider adequately whether the evidence at trial showed that Mr. Jenkins had the opportunity to retreat from his confrontation with Mr. Meyers. Objections at 3. By contrast,

neither of Mr. Jenkins's other objections merits *de novo* review. Even when viewed to raise the strongest arguments they suggest, both of those objections are purely conclusory. Therefore, they are entitled only to clear error review.

Mr. Jenkins did not object to the R&R's description of the legal standard applicable to his petition, and the evaluation of a claim for ineffective assistance of counsel. R&R at 11-16. The Court has reviewed it for clear error and finds none. Therefore, the Court adopts those aspects of the R&R. Still, for ease of reference, the Court begins by restating the AEDPA standard of review and the legal standard for ineffective assistance of counsel. The Court then reviews Judge Lehrburger's conclusions that the state court reasonably determined that appellate counsel was not ineffective in not appealing denial of a justification instruction.

### A. AEDPA Standard of Review

Since the AEDPA was enacted, "federal habeas review of state court convictions has been narrowly circumscribed." *Portalatin v. Graham*, 624 F.3d 69, 78 (2d Cir. 2010) (internal citation omitted). "Where . . . the challenged state court decision was adjudicated on the merits, the writ may not issue unless the state court proceeding: '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Id.* at 79 (quoting 28 U.S.C. § 2254(d)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" (internal citations omitted)).

The Second Circuit has "held that a state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when it states that it is disposing of the claims on the merits and reduces its disposition to judgment." *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003); *see also id.* at 160–61 (finding that "[a]s the state court adjudicated petitioner's claims 'on the merits,' we apply the

8

deferential standard of review prescribed by AEDPA"). "If a state court has not adjudicated the claim 'on the merits,' we apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims." *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001). "To determine whether a state court has disposed of a claim on the merits, we consider: '(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits.'" *Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio*, 269 F.3d at 93); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) ("'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.").[4]

Under Section 2254(d)(1):

> To qualify as "clearly established" for the purposes of federal habeas review, a rule of law must be embodied in the "holdings, as opposed to the dicta," of Supreme Court precedent. And, for a state court decision to be "contrary to," or an "unreasonable application of," that Supreme Court precedent, the decision must: (1) "arrive[] at a conclusion opposite to that reached by [the Supreme Court] on a question of law"; (2) "decide[] a case differently than [the Supreme Court] on a set of materially indistinguishable facts"; or (3) "identif[y] the correct governing legal principle . . . but unreasonably appl[y] that principle to the facts of the prisoner's case." If none of these conditions is met, even if the federal court would have reached a different conclusion on direct review, the petition must be denied.

---

[4] *See also Ryan v. Miller*, 303 F.3d 231, 246 (2d Cir. 2002) ("A state court need not analyze each individual claim or cite federal law in order to adjudicate a claim, so long as it states it is disposing of the claim on the merits, and it issues a judgment." (citing *Aparicio*, 269 F.3d at 93–94 ("So, to invoke the deferential standards of AEDPA, the state court need only dispose of the petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required."); *Sellan*, 261 F.3d at 312 ("[A] federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."); *id.* ("We have found a claim 'adjudicated on the merits,' triggering the AEDPA standard of review, where the claim was dismissed by the state court with the blanket phrase, '[D]efendant's remaining contentions are without merit.'" (citing *Brown v. Artuz*, 283 F.3d 492, 498 (2d Cir. 2002)); *Aparicio*, 269 F.3d at 94 (concluding that a claim was "adjudicated on the merits" by the state court even though it did not "mention[] . . . relevant case law," because "there is nothing in [the state court's] decision to indicate that the claims were decided on anything but substantive grounds," and concluding that "[t]hus, . . . we must review that [state court's] decision under AEDPA's deferential standards).

*Portalatin*, 624 F.3d at 79 (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets in *Portalatin*).[5]  "The Supreme Court has explained that an 'unreasonable application' is one that is 'more than incorrect or erroneous'; it must be 'objectively unreasonable.'" *Rivas v. Fischer*, 780 F.3d 529, 546 (2d Cir. 2015) (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).  "In other words, the state court's decision must be 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).[6]  "The question therefore 'is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Garlick v. Lee*, 1 F.4th 122, 129 (2d Cir. 2021) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

"Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims,' and to give appropriate deference to that decision." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (internal citations omitted).  And the Supreme Court has "h[e]ld that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits . . . .  It follows that the record under review is limited to the record in existence at that same time[,] *i.e.*, the record before the state court." *Cullen*, 563 U.S. at 181–82.

---

[5] *See also Garlick v. Lee*, 1 F.4th 122, 129 (2d Cir. 2021) ("'A principle is clearly established Federal law for § 2254(d)(1) purposes only when it is embodied in a Supreme Court holding, framed at the appropriate level of generality.'  'A state court decision is contrary to such clearly established law when the state court either has arrived at a conclusion that is the opposite of the conclusion reached by the Supreme Court on a question of law or has decided a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" (quoting *Washington v. Griffin*, 876 F.3d 395, 403 (2d Cir. 2017)).

[6] *Accord Garlick*, 1 F.4th at 129 ("An unreasonable application of clearly established federal law occurs when 'the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case, so that the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Washington*, 876 F.3d at 40).

10

As for Section 2254(d)(2), "a 'state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). "Where '[r]easonable minds reviewing the record might disagree' as to the relevant finding, that is not sufficient to supplant the state court's factual determination." *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)). "Nevertheless, the state court's finding might represent an 'unreasonable determination of the facts' where, for example, reasonable minds could not disagree that the trial court misapprehended or misstated material aspects of the record in making its finding, or where the court ignored highly probative and material evidence." *Id.* (internal citations omitted).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—(A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

### B. Ineffective Assistance of Counsel

Judge Lehrburger also correctly set forth the law on ineffective assistance of counsel. It is well established that the Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the familiar two-part test for determining whether an attorney's representation was ineffective.

First, the defendant must demonstrate that the representation "fell below an objective standard of reasonableness." *Id.* at 688. Under this first prong of *Strickland*, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The court examines the reasonableness of counsel's actions, keeping in mind that "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690); *see also Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

Second, the defendant must demonstrate that the deficient representation prejudiced him. *Strickland*, 466 U.S. at 694. The prejudice component of *Strickland* asks whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gueits v. Kirkpatrick*, 612 F.3d 118, 122 (2d Cir. 2010) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. To warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a plausible claim of ineffective assistance of counsel, not that "he will necessarily succeed on the claim." *Armienti v. United States*, 234 F.3d 820, 823 (2d Cir. 2000) (quoting *United States v. Tarricone*, 996 F.2d 1414, 1418 (2d Cir. 1993)).

### C. The R&R Correctly Denied Mr. Jenkins's Petition

Mr. Jenkins's first contention—that his conviction should be overturned because "there was a reasonable view of the evidence to charge [j]ustification"—is unconvincing. *See* Objections at 3.[7] In his objections, Mr. Jenkins argues that the R&R's conclusion was incorrect "because Jenkins could not have retreated." *Id.* The R&R did not specifically address whether the evidence showed that Mr. Jenkins could have retreated. But as Judge Lehrburger explained, because "Jenkins failed to provide sufficient evidence of his reasonable fear of deadly physical force . . . the Court need not address whether he had a duty to retreat." R&R at 18 n. 9.

Judge Lehrburger correctly decided that it was unnecessary to evaluate whether Mr. Jenkins could have retreated given the insufficient evidence that Mr. Jenkins reasonably believed that Mr. Meyers was going to attack him using deadly physical force. Under New York's penal law, a person "may not use deadly physical force upon another person . . . unless (a) The actor reasonably believes that such other person is using or about to use deadly physical force. Even in such case, however, the actor may not use deadly physical force if he or she knows that with complete personal safety, to oneself and others he or she may avoid the necessity of so doing by retreating . . . ." NY Penal Law § 35.15(2)(a). So, for Mr. Jenkins to be entitled to a justification charge, there would have to be sufficient evidence to support *both* that he had a reasonable belief that Mr. Meyers was about to use deadly force *and* that he was unable to retreat. *See, e.g.*, *People v Fermin*, 828 N.Y.S.2d 546, 548 (2d Dept., Jan. 30, 2007) ("In order to establish a justification defense under Penal Law § 35.15(2), the evidence must show that the defendant reasonably believed that he or she was in imminent danger

---

[7] In his objections, Mr. Jenkins does not specifically contest the R&R's conclusion that the evidence presented at trial did not support a justification charge for the use of deadly force. Still, the Court has reviewed the record *de novo* and concludes that the R&R's determination that the trial court's decision not to issue a justification instruction was correct for the reasons stated in the R&R. Mr. Jenkins has not met the burden required for this Court to reevaluate the finding of the trial court that the evidence at trial did not support the charge. Mr. Jenkins disagrees with that determination, but his disagreement alone is not sufficient to supplant the decision. As the R&R lays out at length, there is substantial evidence to support the trial court's determination that a justification instruction was not warranted. R&R at 18-20.

of being subjected to deadly physical force, *and* that he or she had satisfied his or her duty to retreat, or was under no such duty.") (emphasis added).

From his briefing on this issue in his objections, it appears that Mr. Jenkins believes that he was entitled to the justification instruction so long as there was sufficient evidence that he could not retreat, regardless of whether there was sufficient evidence that he reasonably believed that Mr. Meyers would use deadly force. Objections at 3. That is not the case. For this reason, Mr. Jenkins's objection to the R&R lacks merit. As a result, the Court adopts the R&R's analysis in full and its conclusion that "Jenkins may have reasonably feared imminent **non-deadly** physical force, but that would not warrant an instruction on justification for using **deadly** force." R&R at 20 (emphasis in original). Therefore, Mr. Jenkins's appellate counsel's decision not to raise on appeal the trial court's decision not to administer a justification charge was not ineffective assistance of counsel.

The Court has reviewed the remainder of the R&R for clear error and found none.

### IV.    CONCLUSION

The Court adopts Judge Lehrburger's thoughtful and well-reasoned report and recommendation in full. For the reasons articulated above, Mr. Jenkins's petition for a writ of habeas corpus is DENIED.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The petitioner has not made a substantial showing of the denial of a constitutional right, so the Court denies a certificate of appealability under 28 U.S.C. § 2253.

The Clerk of Court is directed to terminate all outstanding motions, to enter judgment for Respondent, and to close this case.

SO ORDERED.

Dated: October 20, 2025
New York, New York

_____
GREGORY H. WOODS
United States District Judge